**Brent BEALS, Plaintiff,**

v.

**KIEWIT PACIFIC COMPANY, INC., Defendant.**

Civ. No. 91–00471 DAE.

United States District Court, D. Hawaii.

June 28, 1993.

Lunsford D. Phillips, Honolulu, HI, for plaintiff.

Dale W. Lee, David L. Monroy, Lex R. Smith, Ernest H. Nomura, Kobayashi Sugita & Goda, Barry W. Marr, David P. Ledger, Carlsmith Ball Wichman Murray Case Mukai & Ichiki, Honolulu, HI, for defendant.

ORDER GRANTING DEFENDANT'S MO-
TION FOR PARTIAL SUMMARY
JUDGMENT ON COUNT III OF THE
COMPLAINT AND DENYING DE-
FENDANT'S MOTION TO DISMISS
OR, IN THE ALTERNATIVE, MO-
TION FOR PARTIAL SUMMARY
JUDGMENT ON COUNTS IV AND V
OF THE COMPLAINT

DAVID ALAN EZRA, District Judge.

This matter comes before the court on defendant's consolidated motions for summary judgment. The court heard argument on the motions on June 22, 1993. Lunsford D. Phillips, Esq., appeared on behalf of plaintiff; Ernest Nomura, Esq., appeared on behalf of defendant. After reviewing the motion and the supporting and opposing memoranda, the court grants defendant's motion on Count III and denies defendant's motion on Counts IV and V.

## BACKGROUND

Plaintiff Brent Beals filed this action alleging breach of an employment contract with defendant Kiewit Pacific Company, Inc. ("Kiewit"). Viewed in the light most favorable to Beals, the facts leading up to the complaint are as follows. Beals had been employed as a concrete boom pump operator in California since 1985. In 1990, Beals was employed by Merli Concrete Pumping Company ("Merli") in San Marcos, California, where he would have remained until March 31, 1993. *See* Plaintiff's Memorandum in Opposition, Ex. F. During September 1990, Beals was assigned by Merli to operate a concrete pump for Kiewit Construction Company, Inc. (a sister company of defendant Kiewit Pacific Company, Inc.) for "a few months."

While working at the Kiewit Construction site, Beals met Mr. Stuart Stevens, a foreman for Kiewit Construction, and Mr. Paul Edstrom, a superintendent for Kiewit Construction. In January 1991, both Stevens and Edstrom informed Beals they were moving to Hawaii to work on separate projects for Kiewit Pacific and would see what they could do to get Beals a job there. In late January and early February, 1991, Beals began negotiating with Stevens regarding potential employment at an airport construction project in Honolulu, and with Edstrom regarding potential employment at an airport construction project on Maui. These negotiations took place by phone between Hawaii and California.

In mid-February 1991, on the last day of Beals' assignment at the Kiewit Construction site, Stevens telephoned Beals and offered him employment on the Honolulu project. Stevens offered Beals a number of incentives to accept the Honolulu job rather than the Maui job. According to Beals, one of the primary inducements to accept the Honolulu offer was a promise of employment for at least two years. That same day, Beals received a facsimile document from Kiewit, referred to herein as the "move letter," which outlined the terms and conditions of Beals' employment. The move letter stated, among other relevant terms: "We desire your commitment to work on this project for the

duration or until other Kiewit projects require/desire your expertise." Plaintiff's Memorandum in Opposition, Ex. B. Beals signed and returned the move letter to Kiewit on February 13, 1991 (that same day), and reported for work in Honolulu on February 21, 1991.

On July 26, 1991, just over five months after Beals arrived in Honolulu, Kiewit terminated Beals' employment due to "lack of work." Although Beals alleges that Kiewit lied about the reason for his termination, that disputed fact is not material to the resolution of the instant motions. Beals has not worked for defendant since July 26, 1991.

On August 21, 1991, Beals commenced this action alleging breach of his employment contract by Kiewit. In his second amended complaint, Beals added four more counts to his complaint for negligent misrepresentation, bad faith termination (Count III), and two counts of violating California Labor Code § 970 (Counts IV and V). Beals subsequently filed a third amended complaint, where he restated his bad faith termination claim as one for "tortious breach of contract." All other allegations remain substantively the same.

Kiewit filed a motion for partial summary judgment on Count III arguing that Hawaii does not recognize a bad faith termination or tortious breach of employment contract cause of action. Kiewit also filed a motion to dismiss or, in the alternative, for summary judgment on Counts IV and V arguing that under established choice of law doctrine, Beals cannot assert his California Labor Code claim in a United States District Court sitting in Hawaii. The motions were consolidated for hearing.

## STANDARD OF REVIEW

A motion to dismiss will be granted where the plaintiff fails to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). A complaint should not be dismissed unless it appears to a certainty that plaintiff can prove no set of facts which would entitle the plaintiff to relief. *Neitzke v. Williams,* 490 U.S. 319, 326–27, 109 S.Ct. 1827, 1832, 104 L.Ed.2d 338 (1989); *Fidelity Fin. Corp. v. Federal Home Loan Bank,* 792 F.2d 1432,

1435 (9th Cir.1986), *cert. denied,* 479 U.S. 1064, 107 S.Ct. 949, 93 L.Ed.2d 998 (1987); *Stender v. Lucky Stores, Inc.,* 766 F.Supp. 830, 831 (N.D.Cal.1991). All allegations of material fact are taken as true and construed in the light most favorable to the plaintiff. *Stender,* 766 F.Supp. at 831.

To the extent, however, that "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment." Fed.R.Civ.P. 12(b). Rule 56(c) provides that summary judgment shall be entered when:

> [T]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c). The moving party has the initial burden of demonstrating for the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) (*citing Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). However, the moving party need not produce evidence negating the existence of an element for which the opposing party will bear the burden of proof at trial. *Id.* 477 U.S. at 322, 106 S.Ct. at 2552.

Once the movant has met its burden, the opposing party has the affirmative burden of coming forward with specific facts evidencing a need for trial. Fed.R.Civ.P. 56(e). The opposing party cannot stand on its pleadings, nor simply assert that it will be able to discredit the movant's evidence at trial. *See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir. 1987); Fed.R.Civ.P. 56(e). There is no genuine issue of fact "where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986) (citation omitted).

At the summary judgment stage, this court may not make credibility determinations or weigh conflicting evidence. *Musick v. Burke,* 913 F.2d 1390, 1394 (9th Cir.1990).

The standard for determining a motion for summary judgment is the same standard used to determine a motion for directed verdict: does the evidence present a sufficient disagreement to require submission to a jury or is it so one-sided that one party must prevail as a matter of law? *Id.* (citation omitted).

Because the court has considered materials outside the pleadings, it will treat both motions as motions for summary judgment.

## DISCUSSION

### I. BAD FAITH TERMINATION

In his second amended complaint, Beals alleged "bad faith termination" as Count III arguing that Kiewit is liable for the way in which it terminated him. Kiewit moved for summary judgment on the ground that Hawaii does not recognize a claim for "bad faith termination." Acknowledging Kiewit's objection, Beals amended his complaint, renaming Count III as a "tortious breach of contract" claim, but otherwise keeping the count substantively identical.

■ Assuming for purposes of this discussion that Kiewit's move letter constitutes an employment contract, it is irrelevant whether Beals labels the third count "bad faith termination" or "tortious breach of contract." Regardless of the label, Beals is trying to hold Kiewit liable for the way in which it terminated him. On this point, Hawaii law is clear. Employers are not liable for the manner in which they terminate employees because Hawaii is reluctant to subject each employment contract to judicial review for the "amorphous concept of bad faith." *Parnar v. American Hotels, Inc.*, 65 Haw. 370, 377, 652 P.2d 625, 629 (1982).[1]

■ Beals attempts to distinguish *Parnar* on the ground that *Parnar* involved an at-will employee attempting to enforce a contractual duty of good faith, but here Beals is alleging Kiewit breached its duty to "refrain from intentionally injuring another contracting party by the means of breaching a contract." *See Resco, Inc. v. Founders Title Groups, Inc.*, 751 F.Supp. 1442 (D.Haw.1990).

Although Hawaii does recognize a tortious breach of contract cause of action, the Hawaii courts have not addressed whether they would adapt this cause of action to the employment context.[2] *Resco* itself not only involved a sales contract, it expressly distinguished *Parnar* on the basis that *Parnar* involved an employment contract. The court stated: "In *Parnar*, the Hawaii Supreme Court refused to adopt a rule that an *employer* has an implied duty to terminate an *employee* in good faith." *Resco*, 751 F.Supp. at 1444 (emphasis in original).

Although Beals argues that *Parnar* only controls cases where the plaintiff was an at-will employee, the court does not agree. Beals' claim is substantively similar to the plaintiff's claim in *Parnar*. In *Parnar*, plaintiff alleged that her employer had an implied duty to terminate her only for just cause, i.e. a duty to act in good faith. Here, Beals alleged that Kiewit had an implied duty not to lie about the reason it terminated him, i.e. a duty to act in good faith. Regardless if the claim is labelled bad faith termination or tortious breach of contract, *Parnar* clearly states that a wrongfully discharged employee is not entitled to expand her rights by imposing upon an employer an implied duty to terminate in good faith. *Parnar*, 65 Haw. at 377, 625 P.2d at 629. Thus, *Parnar* is the controlling case and summary judgment is granted.

### II. CALIFORNIA LABOR CODE VIOLATIONS

In his second and third amended complaint, Beals alleged that Kiewit violated California Labor Code § 970. Specifically, Beals alleged:

---

1. Hawaii does recognize a narrow exception to this rule where the employee's discharge "violates a clear mandate of public policy" such as racial or sexual discrimination. *See Parnar*, 65 Haw. at 380, 652 P.2d at 631. That exception, however, is inapplicable here.

2. California courts have rejected the tortious breach of contract cause of action in the employment context. *See Foley v. Interactive Data Corp.*, 47 Cal.3d 654, 682, 254 Cal.Rptr. 211, 226, 765 P.2d 373, 389 (1988).

25. Upon information and belief the State of California Labor Code, Part Three, Chapter Two, Section 970(a) prohibits inducing an employee to relocate from California to another state with false promises and misrepresentations concerning, *inter alia*, duration of employment.

26. The Defendant did so induce the Plaintiff with such false promises and misrepresentations.

27. As a direct and proximate result of the Defendant's violation of these statutes, the Plaintiff suffered injury and damages in an amount to be shown at trial.

. . . .

29. Upon information and belief the State of California Labor Code, Part Three, Chapter Two, Section 970(a) prohibits inducing an employee to relocate from California to another state with false promises and misrepresentations concerning, *inter alia*, the kind and character of work to be performed.

30. The Defendant did so induce the Plaintiff with such false promises and misrepresentations.

31. As a direct and proximate result of the Defendant's violation of these statutes, the Plaintiff suffered injury and damages in an amount to be shown at trial.

Plaintiff's Third Amended Complaint ¶¶ 25–31. Additionally, Beals seeks to enforce the remedy provided in the California Labor Code for violation of Section 972, which provides:

> [A]ny person, or agent or officer . . . who violates any provision of section 970 is liable to the party aggrieved, in a civil action, for double damages resulting from such misrepresentations. . . .

Cal.Lab.Code § 972 (West 1993).

Kiewit contends that, under Hawaii's choice of law rules, the court cannot apply California law to these circumstances and should therefore deny Beals a remedy that only a court sitting in California could render. Although the court does not believe there necessarily is a *conflict* between the California Labor Code provisions and the Hawaii common law of fraud requiring a choice-of-law analysis, the court finds it appropriate to apply California law *to this issue*.

■ A federal court sitting in diversity must apply the substantive law of the forum state, including the forum state's choice-of-law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941); *P.W. Stephens Contractors v. Mid Am. Indem.*, 805 F.Supp. 854, 856 (D.Haw.1992); *Nielson v. Ono*, 750 F.Supp. 439, 441 (D.Haw.1990). The Supreme Court of Hawaii has stated that determining what state's law to apply requires "an assessment of the interests and policy factors involved with a purpose of arriving at a desirable result in each situation." *Peters v. Peters*, 63 Haw. 653, 664, 634 P.2d 586, 593 (1981). The *Peters* court relied on Robert Leflar, *American Conflicts Law* § 131 (3d ed. 1977) and the *Restatement (Second) of Conflict of Laws* § 6 (1971), among others, for examples of what interests and factors courts should analyze in resolving conflicts of law. Although conflicts questions have not arisen often in Hawaii courts, the courts that have addressed the issue consistently rely on the *Restatement*. *See, e.g., P.W. Stephens*, 805 F.Supp. at 856; *Airgo, Inc. v. Horizon Cargo Transp., Inc.*, 66 Haw. 590, 595, 670 P.2d 1277, 1281 (1983); *California Fed. Sav. & Loan Ass'n v. Bell*, 6 Haw.App. 597, 604, 735 P.2d 499, 504 (1987); *Hall v. American Airlines, Inc.*, 1 Haw.App. 258, 261, 617 P.2d 1230, 1234 (1980).[3]

---

**3.** The Hawaii Supreme Court has been embracing the *Restatement (Second) Conflict of Laws* for 40 years in various contexts. *See, e.g., Allen v. Allen*, 64 Haw. 553, 557, 645 P.2d 300, 304 (1982); *In re Grayco Land Escrow, Ltd.*, 57 Haw. 436, 451, 559 P.2d 264, 274, *cert. denied*, 433 U.S. 910, 97 S.Ct. 2976, 53 L.Ed.2d 1094 (1977); *Kailieha v. Hayes*, 56 Haw. 306, 315, 536 P.2d 568, 574 (1975); *Smith v. Smith*, 56 Haw. 295, 304, 535 P.2d 1109, 1116 (1975); *Gordon v.* *Granstedt*, 54 Haw. 597, 600, 513 P.2d 165, 167 (1973); *Whitehead v. Whitehead*, 53 Haw. 302, 307, 492 P.2d 939, 943 (1972); *In re Burns*, 49 Haw. 20, 29, 407 P.2d 885, 891 (1965); *In re Campbell*, 46 Haw. 475, 565, 382 P.2d 920, 974 (1963). The heavy reliance on this treatise by the Hawaii state courts convinces this court that, if confronted with a choice of law question in the fraud context, the Hawaii Supreme Court would look to the *Restatement* for guidance.

■ Looking at the various interests and policies Hawaii and California each have with respect to the alleged fraud/misrepresentations, with a focus on the factors outlined in the *Restatement,* the court finds that resort to California law would "best serve the interests of the states and persons involved." *Peters,* 63 Haw. at 660, 634 P.2d at 591 (citations omitted). The *Restatement* advocates examining the following contacts, among others, to determine what law to apply to a fraud allegation: (a) where the plaintiff acted in reliance upon the defendant's representation; (b) where the plaintiff received the representation; (c) where the defendant made the representation; (d) the domicil or residence of the parties; and (e) where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant. *Restatement, supra,* § 148.

■ In the instant case, both California and Hawaii have significant contacts to the case. Hawaii is the forum state. Beals is a domiciliary of Hawaii, and Kiewit does business in Hawaii. The representations concerning the type of work and the duration of employment were made from Hawaii. Finally, the services under the contract were to be performed in Hawaii. California, however, is where Beals was domiciled at the time the representations were made and is where Beals received them. Kiewit does business in California and is subject to the California Labor Code provisions. Beals was a skilled employee in California and would have continued with his job for at least two years. Beals became associated with Kiewit and met the Kiewit employees with whom he later negotiated his employment while working at the Kiewit Construction site in California from September 1990 to February 1991. After receiving the move letter in California, Beals quit his California job, left his home and family in California, and moved to Hawaii. Thus, the actions Beals took in reliance on the representations Kiewit made were all taken in California.

Furthermore, California has a strong interest in protecting its residents from being fraudulently induced to move out of the state by foreign employers. *See Tyco Indus., Inc.*

*v. Superior Court,* 164 Cal.App.3d 148, 155, 211 Cal.Rptr. 540, 544 (1985). Hawaii, on the other hand, has no direct interest in protecting the residents of California from fraudulent conduct. While Hawaii does have a strong interest in ensuring that employment contracts for services to be performed within the state are uniformly enforced, the issue here is which state has a greater interest in protecting against employment fraud. On these facts, California plainly has the greater interest.

Unfortunately, there are no Hawaii cases directly on point. On nearly identical facts, however, a Washington state court similarly held that California law should apply. In *Kammerer v. Western Gear Corp.,* 27 Wash. App. 512, 618 P.2d 1330 (1980), *aff'd,* 96 Wash.2d 416, 635 P.2d 708 (1981), which involved an allegation that defendant fraudulently induced plaintiffs to enter a contract, the court analyzed the many contacts in and the policy interests of both Washington (the forum state) and California (the state in which the negotiations and fraudulent representations occurred). The court applied the *Restatement* approach, applicable under Washington's choice of law rules, to determine that California had the "most significant relationship" to the controversy. *Id.* at 519–20, 618 P.2d at 1334–36. The court noted:

California has an obvious interest in the protection of its citizens against fraud, which is enhanced when the negotiations on which the fraud claim is based occurred in California. California has an interest in deterring fraudulent activities by corporations having a substantial business presence within its borders. Washington has no interest in protecting persons who commit fraud. Western Gear asserts that differences in Washington and California law governing fraud suggest that Washington has a policy of greater caution in allowing judgments for fraud. Because we do not find any difference, material to this case, in the laws of the two states, we do not find any interest served by application of Washington law. Because Washington has no interests superior to or inconsistent with the interests of California in this controversy, application of the Restatement

rule dictates that California law govern the Kammerers' claim for fraud.

*Id.* at 520–21, 618 P.2d at 1336.

Likewise, here, Hawaii has no interests superior to or inconsistent with the interests of California in Beals' fraudulent inducement claims. In Counts IV and V, Beals has chosen to pursue a cause of action for a very specific form of fraud in the employment context because, if he succeeds, he would be entitled to double damages. Because double or treble damages are analogous to punitive damages, *see Eastern Star, Inc. v. Union Bldg. Materials Corp.*, 6 Haw.App. 125, 142, 712 P.2d 1148, 1159 (1985), and Hawaii courts allow punitive damages on fraud claims, *see, e.g., Kang v. Harrington*, 59 Haw. 652, 664, 587 P.2d 285 (1978) ($2,500 punitive damages on $1,800 general damages); *Silva v. Bisbee*, 2 Haw.App. 188, 192, 628 P.2d 214 (1981) ($50,000 punitive damages on $29,000,000 general damages), the court finds no inconsistencies between Hawaii and California law. All of these factors convince the court that California substantive law should apply to Beals' fourth and fifth causes of action.

## CONCLUSION

For the reasons stated above, the court GRANTS Kiewit's motion for partial summary judgment on Count III and DENIES Kiewit's motion for summary judgment on Counts IV and V.

IT IS SO ORDERED.